## Milk Control Commission v. Paulishak, etc., et al.

*J. Desmond Kennedy* and *Robert E. O'Brien*, for appellants.

*William F. Schutte, Frank E. Coho*, Deputy Attorney General, and *Otto Robinson*, for Milk Control Commission.

LEACH, P. J., March 17, 1941.—The court makes the following findings of fact:

1. Defendant milk dealer did without reasonable cause fail to account for milk purchased from milk producers during the period from January 1, 1939, to and including

September 30, 1939, in accordance with the official general orders of the Milk Control Commission.

2. The defendant milk dealer did fail to keep records and to furnish accurate statements and information required by the Milk Control Commission by its official general order B1.

3. The said defendant milk dealer did fail to file with his application for milk dealer's license for the year May 1, 1940, to April 30, 1941, a proper bond to be approved by the commission.

### Discussion

The Milk Control Commission is a bureau recently established under prevailing theories of government. The constitutionality of the Milk Control Law of January 2, 1934, P. L. 174, now supplied by the Milk Control Law of April 28, 1937, P. L. 417, has been established in several cases: Rohrer v. Milk Control Board, 322 Pa. 257; Harrisburg Dairies, Inc., v. Eisaman et al., 338 Pa. 58; and others.

Under the present requirements it is necessary for a milk dealer to obtain a license and keep numerous and costly records of all transactions ready for inspections. Certain milk must be scorched and called "pasteurized". Various other things regarding the milk must be done, beginning the year before it is produced and reaching to the time it is delivered to the ultimate consumer. Many acts formerly innocent are made crimes and may subject the unfortunate person in the milk business to penalties. A bureaucracy of inspectors, lawyers, physicians, and labor politicians is thus maintained at the expense of the milk business. In order to get milk to poor people who need it, it must be bought by the government and delivered to them free. Nobody is sufficiently interested to weigh the reasons against the existence of these numerous regulations and the bureaucracy supported to enforce them.

The defendant Paulishak concluded to short-cut part of the expense imposed by this bureaucracy, that of keep-

ing records, by agreeing to pay the milk producers 10 cents per can more than competing milk dealers would pay them. Thus the producer got more money and Paulishak was saved the expense of hiring a bookkeeper.

The records he kept were merely sufficient to show the amount of milk that he got from the different producers and the fact that he paid them for that milk. When the inspectors descended upon him, his records were incomplete. By figuring out the amount of milk that he had bought and charging the highest price that he could pay a producer, the board figured out that he owed over $1,600 and penalized him to that amount.

The producers were well satisfied that they had received a greater sum than they would be entitled to if the records had been properly kept, and gave defendant an assignment of all their claims against him and a receipt for everything that he owed them. These assignments and receipts were produced before the Milk Control Commission, which refused to admit them in evidence.

No doubt the assignments and the releases would not avail defendant in a suit by the milk producers against defendant. Section 807 of the Milk Control Law of 1937, supra, provides that it shall be unlawful to sell or buy milk at any price below the minimum price or above the maximum price applicable to the particular transaction, the said price being fixed by the commission. The gist of a further provision is to the effect that no method or device which shall change the price shall be lawful. It lists numerous evasions such as premiums, discounts, rebates, advertising, and so forth.

Defendant contends that because this section does not particularly list the device of release and assignment the operation of such a paper is excluded. We do not approve that contention because the thing that is done when milk is sold for less than the price fixed by the commission is unlawful under our present decisions. A release or assignment cannot evade the consequences of an unlawful act.

566

In the case at bar the Milk Control Commission is in the embarrassing position of having *figured* from incomplete records kept by Paulishak that Paulishak owes the milk producers a sum of money. The milk producers say that Paulishak owes them nothing, and they are well assured that they got more money than any competitor would pay them. Wherefore, if the commission had this sum of money in their hands, it is merely proof of the fact that their figuring is not properly done.

For these reasons we do not uphold the order that defendant pay the sum of more than $1,600 to the Milk Commission for the benefit of producers who have disclaimed all interest in it.

We do hold that defendant did not keep the proper records, that he did not substantially comply with the orders of the board, that he did not file a proper bond, and is therefore not entitled to a license.

Now, March 17, 1941, the order of the Milk Control Commission refusing defendant his license for the year 1940 to 1941 is affirmed.